# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

OAKLAND PHYSICIANS MEDICAL CENTER, )
LLC d/b/a PONTIAC GENERAL HOSPITAL )
461 West Huron Street )
Pontiac, Michigan 48341 )
                                                    )      Case No._____
                                                    )
        Plaintiff, )
v. )
                                                    )
THOMAS E. PRICE, Secretary, )
United States Department of Health )
and Human Services )
200 Independence Avenue, S.W. )
Washington, DC 20201 )
                                                    )
        Defendant. )
_____ )

## COMPLAINT FOR
## JUDICIAL REVIEW OF FINAL ADVERSE
## AGENCY DECISION ON MEDICARE REIMBURSEMENT

## I.     INTRODUCTION

1.     Oakland Physicians Medical Center d/b/a Pontiac General Hospital (the "Hospital") provides services to the residents of Pontiac, Michigan, which includes a large number of elderly and indigent patients.[1]

2.     The Hospital trains residents in Family Medicine, which is among the primary care areas of physician practice for which a severe shortage is forecast.[2]

---

[1]  The 2016 average unemployment rate in Pontiac, Michigan was 9.9%.  See http://unemployment-rates.careertrends.com/l/3758/Pontiac-MI (last reviewed 2/27/2017).

[2]  Source: American Association of Medical Colleges, http://www.aafp.org/news/practice-professional-issues/20150303aamcwkforce.html (last viewed 2/27/2017).

3.      The Hospital is compelled to commence this suit to seek the Court's relief in rectifying an egregious Medicare Administrative Contractor ("MAC") determination that, despite operating an accredited residency program in Family Medicine for many years, for Medicare payment purposes no full time equivalent ("FTE") residents qualified for Medicare payment during fiscal year ended ("FYE") 12/31/2009.

4.      As explained, *infra*, Medicare payment for medical education is directly proportional to the number of FTE residents the MAC approves on audit.  Moreover, the number of FTE residents the MAC approves each year is a three-year rolling average of the current, prior and penultimate years.  As a result of the MAC's error regarding FYE 12/31/2009, therefore, the Hospital's Medicare payment for medical education was severely and adversely impacted for FYE's 12/31/2009, 12/31/2010 and 12/31/2011.  As a result, the Hospital is deprived of several million dollars in Medicare payment.

5.      The Hospital, which was previously in bankruptcy, entered into a Settlement Agreement with the Centers for Medicare and Medicaid Services ("CMS") regarding resolution of certain overpayment amounts which prohibited the Hospital from appealing the MAC's FYE 12/31/2009 error.

6.      The Hospital timely requested that the MAC correct its error by what in Medicare parlance is called a "reopening." The MAC agreed in written notices to conduct reopening of FYE's 12/31/2009, 12/31/2010 and 12/31/2011, the MAC issued proposed adjustments which in effect acknowledged the error, and the MAC agreed to correct the error.

7.      Accordingly, in reliance on the MAC's notices of reopening and proposed remedial action, the Hospital had no need to, and in fact did not, pursue the administrative and judicial appeals process to which it otherwise was entitled.

8.     Ordinarily an appeal must be filed with the administrative tribunal, the Provider Reimbursement Review Board (the "PRRB"), within 180 days of notice of final audit of a fiscal year.  An appeal can be filed following that 180 day deadline and within three years of the notice of final audit for "good cause."

9.     After the 180 day deadline for the Hospital to appeal to the PRRB for FYE's 12/31/2010 and FYE's 12/31/2011 expired, the MAC then peremptorily terminated its reopening notices based on the MAC's erroneous interpretation of the Settlement Agreement between the Hospital and CMS, which the MAC interpreted as precluding correction of the FYE 12/31/2009 error in order to carry the correction forward to FYE's 12/31/2010 and 12/31/2011.

10.     The Hospital then filed appeals with the PRRB based on "good cause" to seek relief from the adverse Medicare impact of FYE 12/31/2009 on FYEs 12/31/2010 and FYEs 12/32/2011.  The PRRB, however, found that the Hospital's late appeals did not satisfy "good cause" and declined to accept jurisdiction over the Hospital's appeal.

11.     Although the Hospital pursued all available administrative remedies, the Hospital was, in effect, whipsawed by CMS, the MAC and the PRRB, and is left with the choice of either forfeiting a substantial amount of Medicare medical education payment to which it clearly is entitled or seeking judicial review.

12.     The Hospital has exhausted administrative remedies and the Hospital's claim is ripe for review by this Court.

13.     The Court possesses jurisdiction and the authority to grant relief under 42 U.S.C. § 1395oo(f)(1) (final agency decision), 28 U.S.C. § 1361 (mandamus) and 28 U.S.C. § 1331 (federal question).

14.     The Hospital asks the Court to exercise its jurisdiction and to grant relief by ordering the Secretary to either (i) remand the Hospital's appeals of FYE's 12/31/2010 and 12/31/2011 to the PRRB with an order that PRRB conduct proceedings on the merits or (ii) remand the Hospital's FYE's 12/31/2009, 12/31/2010 and 12/31/2011 to the MAC to conduct and complete the reopenings.

15.     The Hospital further asks the Court to enter a declaratory judgment that the regulation purporting to insulate the decision of the PRRB from judicial review, 42 C.F.R. § 405.1836(e)(4), is unlawful because it deprives the Hospital of its appeal right under 42 U.S.C. § 1395oo(f)(1).  Alternatively, the Hospital asks the Court to exercise its mandamus jurisdiction, 28 U.S.C. § 1361, to grant injunctive relief to the Hospital.  Finally, the Hospital asks the Court to find that it has jurisdiction to grant relief under 28 U.S.C. § 1331.

## II.     JURISDICTION AND VENUE

16.     This is a civil action brought to obtain judicial review of a final agency decision rendered by the Medicare Provider Reimbursement Review Board ("PRRB" or "Board").  This action is timely filed pursuant to 42 U.S.C. § 1395oo(f)(1).

17.     This action arises under Title XVIII of the Social Security Act, as amended (42 U.S.C. §§ 1395 et seq.) hereinafter referred to as the "Medicare Act" or the "Act," which establishes the Medicare program (the "Medicare Program" or the "Program"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, *et seq*.

18.     This Court has jurisdiction under 42 U.S.C. § 1395oo(f) (appeal of final Medicare program agency decision), 28 U.S.C. § 1361 (mandamus) and 28 U.S.C. § 1331 (federal question). Venue lies in this judicial district pursuant to 42 U.S.C. § 1395oo(f). This Court has authority to grant the relief requested under 42 U.S.C. § 1395oo(f) and 28 U.S.C. § 1361 and 28 U.S.C. § 1331.

### III.     PARTIES

19.     Plaintiff Oakland Physicians Medical Center, LLC, d/b/a Pontiac General Hospital (the "Hospital") is an acute care inpatient hospital located in Pontiac, Michigan.  During the relevant period, the Hospital was certified as a "provider of services" participating in the Medicare Program within the meaning of 42 U.S.C. § 1395x(u).

20.     The Defendant, Thomas E. Price, Secretary of Health and Human Services (hereinafter referred to as the "Secretary"), or his predecessors or successors in office, is the federal officer responsible for the administration of the Medicare Program pursuant to the Medicare Act.

21.     The Secretary has delegated Administration of the Medicare Program to the Centers for Medicare and Medicaid Services ("CMS").

### IV.     MEDICARE PAYMENT, COST REPORTING, REOPENING AND APPEAL

22.     The Medicare Act establishes a system of health insurance for the aged and the disabled. Under the Medicare Act, an eligible Medicare beneficiary is entitled to have payment made by the Medicare Program on his or her behalf for, *inter alia,* inpatient and outpatient hospital services provided to him or her by a hospital participating in the Medicare Program as a "provider of services."

23.     Pursuant to 42 U.S.C. § 1395cc, the Hospital entered into a written agreement with the Secretary to provide hospital services to eligible individuals.

24.     Under 42 U.S.C. §1395x(v)(1)(A), providers of inpatient hospital services, such as the Hospital, are entitled to payment from Medicare for their "reasonable costs" incurred in providing services to Medicare patients, in accordance with regulations adopted by the Secretary. Reasonable cost is defined as the "cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and

shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services."  42 U.S.C. §1395x(v)(1)(A).

25.     CMS, through private contractors called Medicare Administrative Contractors ("MAC"), pays providers participating in the Medicare Program for covered services rendered to Medicare beneficiaries. 42 U.S.C. § 1395h. The amount of payment owing to a provider for services furnished to Medicare beneficiaries is determined by the fiscal intermediary acting as an agent of the Secretary. 42 U.S.C. §1395h. The contractor that acted on behalf of the Secretary with respect to the Hospital was Federal Specialized Services ("FSS") and its subcontractors, National Government Services ("NGS"), and Wisconsin Physicians Service ("WPS") (FSS, NGS and WPS are collectively referred to herein as the "MAC").

26.     At the close of its fiscal year, a hospital must submit a "cost report" showing both the cost incurred by it during the fiscal year and the appropriate portion of those costs to be allocated to Medicare.  42 C.F.R. §§ 413.24 and 413.50.  The hospital must submit its cost report in compliance with law. The MAC is required to analyze and audit the cost report and issue a Notice of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its Medicare reimbursement for the cost reporting period in compliance with law.

27.     Within three years of the date of the NPR, a provider has the right to request that the MAC "reopen" its cost report, which is Medicare parlance for requesting a correction or revision to the cost report.  *See* 42 C.F.R. § 405.1885(a).

28.     Whether to grant a provider request for reopening is vested within the discretion of the MAC and neither the PRRB nor the federal judiciary has jurisdiction to review the MAC's

denial of a reopening request. *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449 (1999).

29.     Congress established a tribunal, the Provider Reimbursement Review Board (the "Board" or "PRRB"), to adjudicate disputes between a provider and the Secretary regarding final Medicare payment determinations. "The Board shall be composed of five members appointed by the Secretary . . . . Two of such members shall be representative of providers of services. All of the members of the Board shall be persons knowledgeable in the field of payment of providers of services, and at least one of them shall be a certified public accountant." See 42 U.S.C. § 1395oo(h).

30.     A provider has a right to obtain a hearing before the PRRB by filing an appeal with the PRRB within 180 days of receiving its NPR if the provider "is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of section 1886" of the Medicare Act. See 42 U.S.C. § 1395oo(a)(1)(A)(2). The PRRB has jurisdiction over appeals from the Secretary's determinations if the provider is dissatisfied with the Secretary's final determination, the amount in controversy is equal to $10,000 or more, and the provider requests a hearing within 180 days after notice of the Secretary's determination. 42 U.S.C. § 1395oo(a). See also, 42 C.F.R. §§ 405.1837, 405.1839(b).

31.     Upon information and belief, CMS or the MAC has issued instructions that the MAC will not reopen a cost report for a fiscal year that is pending on appeal before the PRRB.

32.     The PRRB has the authority to assert jurisdiction over a provider request for a hearing filed later than 180 days, but within three years, of receiving its NPR based on a showing of "good cause." 42 C.F.R. § 405.1836. *Sebelius v. Auburn Regional Medical Center*, 133 S.Ct. 817 (January 22, 2013) (Holding *inter alia* that 180-day appeal deadline is not jurisdictional.)

33. The Secretary's regulation authorizing a good cause exception to the 180-day appeal deadline, however, purports to preclude judicial review. 42 C.F.R. § 405.1836(e)(4). Neither this Court nor the Court of Appeals has had occasion to review the validity of this provision.

34. In exercising its authority to conduct hearings, the PRRB must comply with all the provisions of title XVIII of the Medicare Act and regulations issued thereunder, as well as CMS Rulings issued under the authority of the Administrator of the CMS. 42 C.F.R. § 405.1867.

35. A decision of the PRRB shall be final unless the Secretary, on the Secretary's own motion, and within 60 days after the provider of services is notified of the PRRB's decision, reverses, affirms, or modifies the PRRB's decision. 42 U.S.C. § 1395oo(f)(1). A provider has the right to obtain judicial review of any final decision of the PRRB, or any reversal, affirmance, or modification by the Secretary. 42 U.S.C. § 1395oo(f)(1).

36. A decision of the PRRB that the PRRB lacks jurisdiction is subject to judicial review. *See Auburn Medical Center v Sebelius*, 642 F.3d 1145 (D.C.C. 2011) (PRRB decision declining to assert jurisdiction under theory of equitable tolling is subject to judicial review) (Reversed on other grounds, *Sebelius v. Auburn Medical Center*, 133 S.Ct. 117 (2013)). *See also*, *UHI Inc. v Thompson*, 250 F.3d 993 (Sixth Circuit 2001) (PRRB decision declining to assert jurisdiction where provider failed to satisfy a deadline is subject to judicial review); *Inova Alexandria Hospital v. Shalala*, 244 F.3d 342 (Fourth Cir. 2001) (PRRB decision declining to assert jurisdiction where provider failed to satisfy a deadline is subject to judicial review).

37. This Court also has jurisdiction under 28 U.S.C. § 1361, mandamus jurisdiction, because the Hospital has exhausted administrative remedies and is entitled to a writ of mandamus to order the MAC, having issued notices of reopening, to complete the reopening of

the Hospital's FYE 12/31/2009, 12/31/2010 and 12/31/2011 cost reports to correct the MAC's error. *See Monmouth Medical Center v Thompson,* 257 F.3d. 807 (D.C. Cir. 2001) (Exercising mandamus jurisdiction to order cost report reopening); *In Re Medicare Reimbursement Litigation*, 414 F.3d 7 (D.C. Cir. 2005), cert. denied 547 U.S. 1054 (April 3, 2006) (Exercising mandamus jurisdiction to order cost report reopening).

38.     This Court also has jurisdiction under 28 U.S.C. § 1331, federal question jurisdiction. *See Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670 (1986) (Immediate judicial review permitted under 28 U.S.C. § 1331 where "applicable statutes and regulations would not lead to a channeling of claims through the administrative process, but would instead lead to no review at all.") *See also Shalala v. Illinois Council on Long Term Care, Inc.,* 529 U.S. 1 at 19 (2000) (Jurisdiction proper where denying review "would not simply channel review through the agency, but would mean no review at all.")

## V.     MEDICARE PAYMENT FOR MEDICAL EDUCATION

39.     Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted the Prospective Payment System ("PPS") to reimburse acute care hospitals, such as the Hospital, for inpatient hospital operating costs.  See 42 U.S.C. § 1395ww(d).

40.     Under PPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by the hospitals.  Rather, hospitals receive payment for services rendered to Medicare beneficiaries based on a fixed amount per discharge for each of various Diagnosis-Related Groups ("DRGs").  The Secretary adjusts the amount paid on each DRG to account for differences in costs of providing care to Medicare beneficiaries.

41.     In addition to the PPS, the Medicare Program pays hospitals for the direct costs associated with graduate medical education activities ("GME Payment").  *See,* 42 U.S.C. § 1395ww(h)(4)(E); 42 C.F.R. §§ 413.75 – 413.83.

42.     In essence, the GME Payment for each fiscal year is based on (i) a hospital's predetermined "per resident amount," determined and updated for inflation as prescribed by 42 C.F.R. § 413.77, (ii) multiplied by the average of the weighted number of full time equivalent ("FTE") interns and residents the hospital trains during that year and the preceding two years, 42 C.F.R. §§ 413.78 and 413.79, and (iii) multiplied by the hospital's Medicare "patient load," *i.e.*, the percentage of Medicare inpatient hospital days to total inpatient hospital days, 42 C.F.R. § 413.75(b).

43.     Medicare payments to hospitals also include an adjustment for the indirect costs associated with graduate medical education ("IME Adjustment"). *See,* 42 U.S.C. § 1395ww(d)(5)(B)(iv); 42 C.F.R. § 412.105.

44.     The IME Adjustment is based on the ratio of the number of FTE interns and residents to the number of available beds. *Id.*

45.     Thus, the amount of the GME Payment and the IME Adjustment is directly proportional to the number of FTE interns and residents.

46.     The Medicare payment related to the GME Payment and the IME Adjustment is subject to a hospital-specific "cap" on the number of FTE interns and residents, which is based on the number of FTE interns and residents the hospital trained as of a 1996 base year (the "FTE Caps"). 42 U.S.C. 1395ww(h)(4)((F); 42 U.S.C. 1395ww(d)(5)((B)(v)-(viii); 42 C.F.R. § 413.79(c)(2).

47.     If, as in the instant case, the MAC reduces the number of FTE interns and residents below the GME and IME caps, such reduction adversely impacts GME Payment and the IME Adjustment for the fiscal year in which the reduction is made as well as in the two subsequent fiscal years. 42 C.F.R. § 413.75(b).

## VI.     FACTS SPECIFIC TO THE HOSPITAL[3]

48.     For many years, the Hospital has conducted, and received GME Payment and the IME Adjustment for, an accredited residency program in Family Medicine.[4]

49.     Family Medicine is among the primary care medical practice areas for which a significant shortage is predicted.[5]

50.     The MAC made an erroneous audit adjustment for the Hospital's FYE 12/31/2009 cost report by eliminating 100% of the FTE count for purposes of the GME Payment and the IME Adjustment.  The basis for this action was the MAC's finding that there was insufficient documentation. In fact, the Hospital had submitted documentation as the MAC requested, as evidenced by the fact that based on the submitted documentation the MAC requested additional information.  Moreover, from its numerous prior audits of the Hospital the MAC knew full well that the Hospital conducted a medical education program.  It was, therefore, ludicrous that the MAC's audit essentially eliminated for Medicare payment purposes the entirety of residents in the Hospital's residency program during FYE 12/31/2009.

51.     The effect of the MAC's 100% elimination of the FTE count for FYE 12/31/2009 adversely impacted not only the Hospital's 2009 GME Payment and IME Adjustment, but also had a substantial adverse impact for FYE's 2010 and 2011 because of the three-year rolling average for determining the FTE count, as provided by 42 C.F.R. § 413.75(b).

---

[3] The Administrative Record which the Secretary is obligated to file with the Court, and which may be supplemented by the Hospital, will contain the documents evidencing the Hospital's factual allegations.

[4] Accreditation Council for Graduate Medical Education, https://apps.acgme.org/ads/Public/Programs/AccreditationHistoryReport?programId=1194&ReturnUrl=https%3A%2F%2Fapps.acgme.org%2Fads%2FPublic%2FPrograms%2FSearch%3FstateId%3D23%26specialtyId%3D14%26city%3Dpontiac (last viewed 2/27/2017)

[5] Source: American Association of Medical Colleges, http://www.aafp.org/news/practice-professional-issues/20150303aamcwkforce.html (last viewed 2/27/2017).

52.     The NPR for the Hospital's FYE 12/31/2010 was issued on October 17, 2014, equating to a 180-day deadline of April 15, 2015 for requesting a hearing before the PRRB.

53.     The NPR for the Hospital's FYE 12/31/2011 was issued on November 17, 2014, equating to a 180-day deadline of May 16, 2015 for requesting a hearing before the PRRB.

54.     The Hospital timely filed reopening requests (the "Reopening Requests") with the MAC for FYE's 12/31/2009, 12/31/2010 and 12/31/2011 for the purpose of enabling the MAC to correct the erroneous FTE count for 12/31/2009, which when corrected the MAC would then flow through to and correct the erroneous FTE counts in FYE's 2010 and 2011.

55.     By letters dated February 16, 2015, *i.e.*, prior to the 180-day deadline for requesting a hearing before the PRRB for FYE 12/31/2010 (*i.e.*, April 15, 2015) and FYE 12/31/2011 (*i.e.,* May 16, 2015), the MAC granted the Reopening Requests.

56.     In addition to granting the Reopening Requests, the MAC provided to the Hospital proposed adjustments to remedy its audit of FYE 12/31/2009, which evidenced that the MAC conceded that its audit of FYE 12/31/2009 was erroneous and in need of correction.

57.     In reasonable reliance on (i) the MAC's granting of the Hospital's Reopening Requests within the time frame for requesting a hearing before the PRRB for FYE's 12/31/2010 and 12/31/2011, and (ii) the MAC's issuance of proposed adjustments to remedy its audit of FYE 12/31/2009, the Hospital reasonably believed it was unnecessary to file requests for hearing before the PRRB for FYE's 12/31/2010 and 12/31/2011.

58.     Moreover, as stated *supra*, upon information and belief, CMS or the MAC has issued instructions that the MAC will not reopen a cost report for a fiscal year that is pending on appeal before the PRRB. The Hospital interpreted this instruction as precluding the filing of appeals with the PRRB because the MAC granted the Reopening Requests.

59.     By letter dated April 27, 2016, *i.e.*, well after the 180-day deadline for requesting a hearing before the PRRB for FYE's 12/31/2010 and 12/31/2011, the MAC notified the Hospital that the Reopening Requests that the MAC previously granted were closed without the MAC making any of the proposed adjustments.

60.     The MAC's basis for closing the previously granted Reopening Requests was the MAC's erroneous interpretation of a Settlement Agreement and Mutual Release dated October 12, 2011 (the "Settlement Agreement") between the Hospital and CMS in which the Hospital agreed to not appeal, among other earlier fiscal years, fiscal year 2009.[6]

61.     By letters to the MAC dated May 3, 2016, the Hospital asked the MAC to reconsider its closure of the reopening of FYE's 12/31/2009, 12/31/2010 and 12/31/2011 by pointing out that nothing in the Settlement Agreement prevented the MAC from taking corrective action regarding FYE 12/31/2009 (without amending payment for FYE 12/31/2009) and applying that corrective action to the flow through for FYEs 12/31/2010 and 12/31/2011.

62.     The MAC did not reconsider and rescind its closure of the reopening of FYE's 12/31/2009, 12/31/2010 and 12/31/2011.

63.     Presented with the MAC's closure of the previously granted Reopening Requests and the MAC's refusal to rescind the closure, the Hospital was left with no choice but to file late appeals with the PRRB.

---

[6] The Hospital previously filed a timely appeal with the PRRB regarding FYE 12/31/2009 which the PRRB subsequently dismissed on the stated basis that the Hospital had not satisfied a filing deadline. In light of the Settlement Agreement with CMS, the Hospital did not seek reinstatement of that case. Notwithstanding the appeal preclusion for FYE 12/31/2009, however, the MAC was authorized to (i) correct the FYE 12/31/2009 FTE count (without amending payment for FYE 12/31/2009), and (ii) carry forward that corrected count to FYE's 12/31/2010 and 12/31/2011.

64.     Accordingly, by letters to the PRRB dated August 10, 2016, the Hospital requested hearings before the PRRB to appeal the final determination of the MAC for FYEs 12/31/2010 and 12/31/2011.

65.     The Hospital's hearing requests satisfied the requirements for an appeal except that they were filed beyond the 180-day filing deadline but prior to three years following the dates of the NPR's.

66.     The Hospital requested that the PRRB find good cause for the late filings. In support of these requests, the Hospital stated in pertinent part to the PRRB as follows:

   a.  The regulation, 42 C.F.R. § 405.1836, authorizes the Board to grant a good cause exception to the 180-day limit if the request is made within three years of the final determination.

   b.  This request is timely made within three years of the NPR ….

   c.  The regulation, 42 C.F.R. § 405.1836(b), provides in pertinent part that "[t]he Board may find good cause to extend the time limit only if the provider demonstrates in writing it could not reasonably be expected to file timely due to extraordinary circumstances beyond its control . . . ."

   d.  The Provider respectfully requests that the Board should find good cause for several reasons:

      i.  When the NPR was issued, the Provider was in the throes of financial distress, ultimately resulting in the need for the Provider to seek bankruptcy protection, from which the Provider has only recently emerged.  During this period [April of 2015 – September of 2016] of financial distress and bankruptcy, the Provider did not have total control the management of its business and financial affairs. [The MAC refused to complete cost report audits and reviews during this period.]

      ii.  The Provider relied on the MAC's issuance of a reopening letter prior to the passing of the 180 day period and on that basis did not file an appeal within the initial 180 days.

      iii.  The sole issue relates to correct the prior year direct Graduate Medical Education (GME) and Indirect Medical Education (IME) Full Time Equivalent (FTE) resident counts.

    iv. National Government Services (NGS), the prior MAC, made an erroneous audit adjustment for the cost reporting year ended December 31, 2009. In the course of the audit, NGS eliminated 100% of the medical education resident count, both IME and GME, for the year. In doing so, the FI noted a lack of documentation as the basis for its adjustment.

    v. The Provider had submitted documentation as requested. Furthermore, NGS had used this documentation to request additional information. Therefore, NGS' action in a 100% disallowance was clearly erroneous. This was demonstrated to Wisconsin Physician Services' (the current MAC) satisfaction, thereby resulting in the issuance of a reopening letter for 2009.

    vi. Because the GME and IME FTE count for the 2009 fiscal year is applied to the Provider's 2010 and 2011 fiscal years, the effect of the prior MAC's determination that the FTE count was 0 is catastrophic, with an impact of approximately $3 million, in the aggregate.

    vii. The Provider, in good faith, believed that the MAC would resolve the erroneous FTE count determination through the reopening, as witnessed by the enclosed copies of the Provider's request for reopening dated February 4, 2015 and the MAC's notice of reopening dated February 16, 2015, attached to this letter as Exhibits 1 and 2, respectively.

    viii.    For nearly two years the Provider remained of the reasonable belief that the sole issue in this appeal would be resolved through the reopening process until the Provider received correspondence dated April 27, 2016 from WPS closing this fiscal year based on the MAC's interpretation of a Settlement Agreement between the Provider and the Centers for Medicare and Medicaid Services ….

    ix. The Provider believes that the MAC's interpretation of the Settlement Agreement is inaccurate and has requested reconsideration ….

    x. In the granting of a reopening for the fiscal year 2009, the MAC subsequently reviewed the hospital's documentation and issued audit adjustments for Fiscal 2009 ….. The Provider is not appealing to the Board the MAC's reopening denial for 2009.  The Provider notes, however, that if the MAC denies the Provider's request to reopen this year, the Provider's only legal remedy is for the Board to grant this request for an appeal.

    67.    By letters dated January 9, 2017 the PRRB notified the Hospital that the PRRB had denied the Hospital's requests for a good cause late filing.

    68.    As of the date of this Complaint, nearly 60 days following the PRRB decisions, the Hospital has not received notice from the Office of Attorney Advisor of the Administrator of

CMS that the Administrator of CMS will review the PRRB's January 9, 2017 decisions.  Thus, the PRRB's decisions constitute final agency action, over which this Court has jurisdiction. 42 U.S.C. § 1395oo(f)(1).  *See, supra, Auburn Medical Center v Sebelius; UHI Inc. v Thompson*; *Inova Alexandria Hospital v. Shalala.*

69.     This action is commenced within 60 days of the Hospital's receipt of the final agency action and therefore is timely.  42 U.S.C. § 1395oo(f)(1).

## COUNT ONE: DECLARATORY RELIEF

70.     The Hospital repeats the allegations in paragraphs 1-69 of this Complaint as if set forth in this Count One.

71.     The Medicare Act provides for judicial review of the PRRB's final determination of FYEs 12/31/2010 and 12/31/2011 pursuant to the applicable provisions of the APA. 42 U.S.C. § 1395oo(f)(1). *See, supra, Auburn Medical Center v Sebelius; UHI Inc. v Thompson*; *Inova Alexandria Hospital v. Shalala.*

72.     The decisions of the PRRB rejecting the Hospital's requests for a good cause exception appeal were final decisions of the PRRB.

73.      The Secretary's regulation authorizing a good cause exception to the 180-day appeal deadline purports to preclude judicial review (the "Judicial Review Preclusion"). 42 C.F.R. § 405.1867(e)(4).

74.     This Court should declare that the Judicial Review Preclusion is inconsistent with the Medicare Act, 42 U.S.C. § 1395oo(f)(1), as interpreted by this Court and sister Circuits in *Auburn Medical Center v Sebelius; UHI Inc. v Thompson;* and *Inova Alexandria Hospital v. Shalala,* which provides the Hospital the right to judicial review of a final determination of the PRRB denying the appeal requests.

**COUNT TWO: RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT**

75.     The Hospital repeats the allegations in paragraphs 1-74 of this Complaint as if set forth in this Count Two.

76.     The Medicare Act provides for judicial review of the PRRB's final determination of FYEs 12/31/2010 and 12/31/2011 pursuant to the applicable provisions of the Administrative Procedures Act (the "APA"). 42 U.S.C. § 1395oo(f)(1) *See, supra, Auburn Medical Center v Sebelius; UHI Inc. v Thompson*; *Inova Alexandria Hospital v. Shalala.*

77.     The applicable provisions of the APA provide that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence[.]" 5 U.S.C. § 706(2).

78.     The Hospital contends that the PRRB's denial of the Hospital's good cause request for hearing for FYE's 12/31/2010 and 12/31/2011 should be set aside for each of the reasons set forth in the APA where the Hospital provided to the PRRB substantial and uncontradicted evidence, among other facts, that (i) the Hospital had relied, to its detriment, on the MAC's notices of reopening for FYE's 12/31/2009, 12/31/2010 and 12/31/2011, (ii) that the MAC acknowledged and had proposed to remedy its error regarding the FYE 12/31/2009 FTE count, and (iii) that when the 180-day appeal deadlines arose the Hospital was in the throes of financial chaos and did not possess full control over its financial management.

79.     The Court should order the Secretary to remand Hospital's appeals of FYE's 12/31/2010 and 12/31/2011 to the PRRB with an order that PRRB conduct proceedings on the merits.

## COUNT THREE: MANDAMUS

80.     The Hospital repeats the allegations in paragraphs 1-79 of this Complaint as if set forth in this Count Three.

81.     This Court has jurisdiction under 28 U.S.C. § 1361, mandamus jurisdiction, because the Hospital has exhausted administrative remedies.  *See supra, Monmouth Medical Center; In Re Medicare Reimbursement Litigation.*

82.     The Hospital timely and properly requested reopening of the Hospital's FYE's 12/31/2009, 12/31/2010 and 12/31/2011.

83.     The MAC issued notices of reopening for the Hospital's FYE's 12/31/2009, 12/31/2010 and 12/31/2011 and proposed adjustments to correct the error the MAC had committed regarding the FYE 12/31/2009 FTE count.

84.     The decision in *Your Home Visiting Nurse Services*, *supra*, is inapposite here because the MAC in fact issued notices of reopening for the Hospital's FYE's 12/31/2009, 12/31/2010 and 12/31/2011. Having issued notices of reopening and having acknowledged the error it committed regarding the FYE 12/31/2009 FTE count, the MAC's failure to complete the reopening notices is distinguishable from, and not insulated from review under, *Your Home Visiting Nurse Services.*

85.     The MAC's basis for terminating the reopening of the Hospital's FYE's 12/31/2009, 12/31/2010 and 12/31/2011 was erroneous because it was based on an erroneous interpretation of the Settlement Agreement and, further, ignored that the MAC had acknowledged that it committed an error regarding the FYE 12/31/2009 FTE count.

86.     The Court should render an interpretation of the Settlement Agreement that does not prohibit the MAC from reopening the Hospital's FYE's 12/31/2009, 12/31/2010 and 12/31/2011.

87.     The Hospital further exhausted administrative remedies by filing hearing requests with the PRRB for FYE's 12/31/20010 and 2011, which the PRRB denied.

88.     Based on the Court's proper interpretation of the Settlement Agreement, and the PRRB's denial of the Hospital's hearing requests, the Court should order a writ of mandamus to order the Secretary to remand the Hospital's FYE's 12/31/2009, 12/31/2010 and 12/31/2011 to the MAC to conduct and complete the reopenings.

## COUNT FOUR: FEDERAL QUESTION

89.     The Hospital repeats the allegations in paragraphs 1-88 of this Complaint as if set forth in this Count Four.

90.     This Court has jurisdiction under 28 U.S.C. § 1331, federal question jurisdiction. *See supra, Michigan Academy of Family Physicians, Illinois Counsel on Long Term Care.*

91.     The MAC terminated the Reopening Requests and the PRRB denied the hearing requests for FYE's 12/31/2010 and 12/31/2011, therefore making it impossible to channel review through the agency as a prerequisite to judicial review.

92.     The Court should find, therefore, that jurisdiction is proper under these circumstances where denying review "would not simply channel review through the agency, but would mean no review at all."

93.     The Court should, therefore, exercise its federal question jurisdiction and order the Secretary to remand the Hospital's FYE's 12/31/2009, 12/31/2010 and 12/31/2011 to the MAC to conduct and complete the reopenings.

**REQUEST FOR RELIEF**

WHEREFORE, the Hospital respectfully requests that this Court enter an order:

1.  Declaring the Judicial Review Preclusion inconsistent with the Medicare Act, 42 U.S.C. 1395oo(f)(1) and vacating the Judicial Review Preclusion;

2.  Ordering the Secretary to remand the Hospital's appeals of FYE's 12/31/2010 and 12/31/2011 in writing to the PRRB, with copy of such writing to legal counsel for the Hospital, instructing the PRRB (1) to assert jurisdiction over and reinstate the appeals of the Hospital, and (2) to issue a letter to the Hospital and the MAC no later than thirty days following the date of remand to the PRRB, with copy to legal counsel for the Hospitals, notifying them that the PRRB has asserted jurisdiction over and reinstated the appeals, and scheduling proceedings on the merits;

3.  Issuing a writ of mandamus to order the Secretary to remand the Hospital's FYE's 12/31/2009, 12/31/2010 and 12/31/2011 to the MAC to conduct and complete the reopenings;

4.  Exercising its federal question jurisdiction to order the Secretary to remand the Hospital's FYE's 12/31/2009, 12/31/2010 and 12/31/2011 to the MAC to conduct and complete the reopenings;

5.  That this the Court shall retain jurisdiction over this case for purposes of enforcement of the Secretary's compliance with this Court's order;

6.  That the Secretary award the Hospital legal fees and costs; and

7.     That the Court award the Hospital such other relief as the Court may deem just

and proper under the circumstances.

Respectfully submitted,

Kenneth R. Marcus
DC Bar No. MI-0067
HONIGMAN MILLER SCHWARTZ
AND COHN LLP
660 Woodward Avenue, Suite 2290
Detroit, Michigan 48226
Phone: (313) 465-7470
Fax: (313) 465-7471
kmarcus@honigman.com

Dated: March 3, 2017

23975563.1