# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

)
OAKLAND PHYSICIANS MEDICAL )
CENTER, )
 )
    **Plaintiff,** )
 )
       v. )    **Case No. 17-cv-00392 (APM)**
 )
ALEX M. AZAR,[1] )
 )
    **Defendant.** )
_____ )

## MEMORANDUM OPINION

## I.    INTRODUCTION

To appeal, or not to appeal?  That is the question Plaintiff Oakland Physicians Medical Center faced in the fall of 2014, after a Medicare administrative contractor ("MAC") issued two Notices of Program Reimbursement ("NPR") for the fiscal years ending in 2010 and 2011, which Plaintiff viewed as under-reimbursing it for eligible Medicare costs.  How and when Plaintiff could have challenged those determinations is at issue in this case.

The Medicare statute gives a dissatisfied provider the right to appeal a MAC's final decision to the Provider Reimbursement Review Board, so long as that provider files a request for review "within 180 days after notice of the intermediary's final determination."  42 U.S.C. § 1395*oo*(a)(3).  Medicare regulations, however, confer some discretion on the Board to extend the 180-period.  If the provider files the request for review no more than three years from the date of the NPR and can show "good cause" for the delay in filing, the Board "may" exercise

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes the current Secretary of Health and Human Services as the defendant in this case.

jurisdiction over the appeal. 42 C.F.R. § 405.1836(b)–(c). The regulations define "good cause" to mean "extraordinary circumstances beyond [the provider's] control (such as a natural or other catastrophe, fire, or strike)." *Id.* § 405.1836(b).

Plaintiff did not file a request for Board review within 180 days of the 2010 and 2011 NPRs. Instead, Plaintiff moved the MAC to reopen those decisions—a request that the MAC initially granted. But months later, the MAC shut the door on the prospect of a correction by closing the reopenings. In doing so, the MAC found that Plaintiff had contracted away its right to challenge the reimbursement decisions by virtue of a settlement that Plaintiff had reached with the Centers for Medicare and Medicaid Services ("CMS"). Stunned by the MAC's about face, Plaintiff scrambled and filed appeals with the Board, arguing that Plaintiff had good cause to file beyond the 180-day period. The Board disagreed. It refused to extend the 180-day filing period, finding that Plaintiff's decision not to appeal from the 2010 and 2011 NPRs was within its control and therefore Plaintiff had not met the good-cause standard.

Plaintiff now asks this court for two types of relief. First, Plaintiff asks the court to reverse the Board's no "good cause" determination. Second, it asks the court to order the MAC to "complete the reopenings." The court declines to do either. The court concludes, contrary to Defendant's argument, that it has jurisdiction to review the Board's refusal to extend the filing deadline, but ultimately finds that the Board's decision that Plaintiff failed to show good cause was neither arbitrary and capricious nor contrary to law. As to Plaintiff's request to compel the MAC to complete the reopenings, the court lacks jurisdiction to do so. Accordingly, for the reasons that follow, the court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

## II.    BACKGROUND

### A.    Statutory and Regulatory Background

The Medicare Act, 42 U.S.C. § 1395 *et seq*., establishes a federal health insurance program for the disabled and the elderly. A hospital or other provider of medical services participates in the Medicare program under a "provider agreement" with the Secretary of Health and Human Services ("HHS"), the named Defendant in this case. *Id.* § 1395cc. Part A of the Medicare program provides insurance for participating hospitals and pays them for covered medical services furnished to Medicare-eligible individuals. *Id.* §§ 1395c to 1395i-4.

Since 1983, Medicare has reimbursed hospitals for covered services through a prospective payment system. *Id.* § 1395ww(d); *see also UMDNJ-Univ. Hosp. v. Leavitt*, 539 F. Supp. 2d 70, 71–72 (D.D.C. 2008). Under this system, Medicare payments to hospitals are made using pre-determined flat rates for each of more than 450 diagnosis-related groups of treatments and services. *See generally* 42 C.F.R. § 412 *et seq*. Among the add-ons to a hospital's reimbursement are the costs associated with graduate medical education. *See* 42 U.S.C. § 1395ww(d)(5)(B)(iv)(II); *id.* § 1395ww(h). Reimbursement for such costs is determined in part based on a provider's three-year rolling average of full-time equivalent residents. *See id.* § 1395ww(h)(4)(G)(i); 42 C.F.R. § 413.79(d)(3).

CMS, the sub-agency of HHS that administers the Medicare program, uses "Medicare administrative contractors," or "MACs," to calculate and disburse reimbursement amounts. *See* 42 U.S.C. § 1395kk-1. After the close of each fiscal year, a Medicare provider submits to the MAC an annual cost report that sets out in detail the covered services rendered by the provider to Medicare-eligible patients. 42 C.F.R. §§ 413.20(c), 413.24(f). The MAC then reviews the cost report, audits items in the report if necessary, and issues a written Notice of Program

Reimbursement, or "NPR," containing its determination as to the total amount owed to the provider for Medicare-covered services provided for the year in question. *See* 42 C.F.R. § 405.1803.

Providers that are dissatisfied with the reimbursement amounts awarded by a MAC have a way to seek redress. The first level of review is to file an appeal, also known as a request for hearing, with the Provider Reimbursement Review Board. The prerequisites to Board review are set forth in 42 U.S.C. § 1395*oo*(a). As relevant here, that statute states that a provider of services may obtain a hearing before the Board if the provider:

> (1)(A)(i) is dissatisfied with a final determination of the organization serving as its fiscal intermediary . . . as to the amount of total program reimbursement due the provider . . . for the period covered by such [cost] report, . . .
>
> (2) the amount in controversy is $10,000 or more, and
>
> (3) such provider files a request for a hearing within 180 days after notice of the intermediary's final determination . . . .

42 U.S.C. § 1395*oo*(a); *see also* 42 C.F.R. § 405.1835. As to the last of the three requirements—requesting a hearing within 180 days after notice of the final determination—the Supreme Court has held that the timeliness requirement is not a jurisdictional limitation, but a claims-processing rule. *See Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153–56 (2013). Nevertheless, missing the 180-day deadline can have severe consequences. Medicare regulations provide that if the Board receives a request for hearing "after the applicable 180-day time limit," the appeal generally "must be dismissed by the Board." 42 C.F.R. § 405.1836(a); *see also id.* § 405.1840(a)(2) (requiring the Board to review the timeliness of a request for hearing).

All is not totally lost if a provider misses the 180-day filing deadline, but a provider in that circumstance faces a steep uphill climb to secure Board review. Medicare regulations provide that

the Board "may extend the time limit upon a good cause showing by the provider." *Id.* § 405.1836(a). "Good cause" is defined quite narrowly: "The Board may find good cause to extend the time limit only if the provider demonstrates in writing it could not reasonably be expected to file timely due to extraordinary circumstances beyond its control[.]" *Id.* § 405.1836(b). The regulation provides as examples of good cause "natural or other catastrophe, fire, or strike." *Id.* The provider's request for a good-cause extension must be filed within a "reasonable time," and in no event three years after the issuance of the MAC decision that is the subject of the appeal. *Id.* § 405.1836(b), (c)(2).

If, after Board review, a provider remains dissatisfied, it may proceed to a second level of review in federal court. As pertinent here, the Medicare statute authorizes "judicial review of any final decision of the Board" by a federal court if the action is filed "within 60 days of the date on which notice of any final decision by the Board . . . is received." 42 U.S.C. § 1395*oo*(f)(1). The Medicare regulations, however, purport to remove a Board denial of a "good cause" extension from the reach of a federal court. Specifically, the regulations provide that "[a] finding by the Board . . . that the provider did or did not demonstrate good cause for extending the time for requesting a Board hearing is not subject to judicial review." 42 C.F.R. § 405.1836(e)(4). As will be seen, whether that regulation squares with the Medicare statute's allowance of judicial review of "any final decision of the Board" is a threshold question in this case.

The Medicare regulations provide one additional avenue to correct a MAC reimbursement determination: going back to the source. A provider can ask the MAC to reopen its reimbursement determination. *See id.* § 405.1885(a)(1). Such a request must be made within three years. *See id.* § 405.1885(b)(2)(i). In turn, a MAC may readdress a specific factual or legal finding that arose in the cost report that the provider requests be reopened. *See id.* § 405.1885(a)(1). And, importantly

for this case, a reopening may address a specific factual or legal finding that "first arose in or was first determined for a cost reporting period that predates the period at issue . . . , and once determined, was used to determine an aspect of the provider's reimbursement for one or more later cost reporting periods." *Id.* § 405.1885(a)(1)(iii). A reopening "may" result in a revision of the specific finding challenged, but there is no guarantee that a MAC will do so. *See id.* § 405.1885(a)(4).

The Medicare regulations also address the interplay between a request for reopening and an appeal to the Board. Importantly, the regulations state that "[a] request to reopen *does not* toll the time in which to appeal an otherwise appealable determination or decision." *Id.* § 405.1885(b)(2)(ii) (emphasis added). Furthermore, "[a] reopening by itself does not extend appeal rights." *Id.* § 405.1887(d). If a MAC reopens a determination but refuses to revise it, that decision is not subject to further administrative review. *See id.*; *cf. id.* § 405.1885(a)(5) (providing only that a "revised determination or decision" is appealable); *id.* § 405.1889(b)(1) (stating that "only those matters that are specifically revised" are within the scope of an appeal). A non-revised portion of a cost report may not be appealed, even if other portions are revised and appealable. *See id.* § 405.1887(d); *id.* § 405.1889(b)(2) ("Any matter that is not specifically revised (including any mater that was reopened but not revised) may not be considered in any appeal of the revised determination or decision."). And, lastly, the Medicare regulations provide, and the Supreme Court has confirmed, that the decision of a MAC not to reopen an NPR is not subject to judicial review. *See id.* § 405.1885(a)(6); *Your Home Visiting Nursing Servs. v. Shalala*, 525 U.S. 449, 454–58 (1999).

## B. Factual Background

Plaintiff Oakland Physicians Medical Center, which operates as Pontiac General Hospital, is an acute care inpatient hospital located in Pontiac, Michigan. Compl., ECF No. 1, ¶¶ 1, 19. Plaintiff runs an accredited residency program in family medicine. *Id.* ¶ 48; Answer, ECF No. 9, ¶ 48. For years, Plaintiff has sought and received reimbursement from Medicare for direct and indirect eligible costs associated with operating this program. Compl. ¶ 48; Answer ¶ 48.

On October 17, 2014, the MAC issued to Plaintiff an NPR for the fiscal year ending 2010. Administrative R., ECF No. 24 [hereinafter AR], at 87. A month later, on November 17, 2014, the MAC issued to Plaintiff an NPR for 2011. AR 1. As to both the 2010 and 2011 NPRs, Plaintiff believes that it did not receive reimbursement for the full amount of eligible costs associated with its residency program during those years. Compl. ¶ 51. That underpayment, according to Plaintiff, resulted from an error made by the MAC with respect to the 2009 NPR. *See id.* ¶¶ 50–51. Recall that reimbursement for resident education is calculated in part based on a provider's three-year rolling average of full-time equivalent ("FTE") residents. *See* 42 U.S.C. § 1395ww(h)(4)(G)(i); 42 C.F.R. § 413.79(d)(3). For 2009, the MAC eliminated 100% of Plaintiff's FTE count for purposes of determining Plaintiff's residency program-associated costs due to insufficient documentation. Compl. ¶ 50; Answer ¶ 50. The MAC's elimination of the FTE count in the 2009 NPR adversely affected not only the reimbursements for that fiscal year, but also for the two subsequent fiscal years, 2010 and 2011, because of the use of the three-year rolling average in calculating a provider's FTE count. Compl. ¶ 51; Answer ¶ 51. In other words, because the MAC zeroed out Plaintiff's FTE count for 2009, Plaintiff's FTE counts for years 2010 and 2011 were lowered, resulting in a reduced reimbursement for those years.

During the 180-day window that followed both determinations, Plaintiff asked the MAC to reopen the 2010 and 2011 NPRs, but did not appeal them to the Board.  *See* AR 51 (letter regarding 2011 NPR), 138 (letter regarding 2010 NPR).  In its letters to the MAC requesting reopening, Plaintiff noted that it had pending a request to reopen the NPR for 2009 "to correct a material error," which the MAC already had accepted for reopening and was in the process of reviewing.  *See* AR 51, 138.  Plaintiff noted that it sought to reopen the NPRs for years 2010 and 2011 "to adjust for a flow-through resulting from a reopening for the December 31, 2009 Medicare cost report."  *See id.*  By letter dated February 16, 2015—before expiration of the 180-day appeal period for both fiscal years—the MAC advised Plaintiff of its "intent to reopen the cost reports" for 2010 and 2011.  AR 57.

As of July 2015, the reopening process was moving forward.  On or about July 8, 2015, the MAC provided Plaintiff with proposed adjustments to the 2009 NPR to correct for the total elimination of FTEs in that fiscal year.  AR 77–79.

But in three letters dated April 27, 2016—well beyond the 180-day appeal period—the MAC informed Plaintiff that it would be closing all of Plaintiff's pending reopening requests without adjusting any of the cost reports.  In the letter closing the request to reopen the 2009 NPR, the MAC explained that, during its review, it had "discovered a settlement agreement between [CMS] and [Plaintiff]" executed on September 13, 2011, in which Plaintiff "agree[d] that it shall not request reopening of, seek any administrative or judicial review of, or otherwise seek to challenge any matter whatsoever arising out of or related to the FYs 2006, 2008, and 2009 reports." Pl.'s Mot. for Summ. J., ECF No. 16 [hereinafter Pl.'s Mot.], Ex. 1, ECF No. 16-2 [hereinafter

MAC Closing Letters], at 1.[2]  It also closed the reopening requests for fiscal years 2010 and 2011, as the revisions sought for those years were premised on correcting the 2009 NPR.  *See id.* at 2–3.

The settlement agreement referenced by the MAC arose out of over $5.5 million in overpayments by CMS to Plaintiff for fiscal years 2006, 2008, *and* 2009.  *See* AR 60.  As part of the agreement, which the parties entered into in September 2011, the "United States agree[d] to compromise the principal balance of the Overpayments to $3,754,508.00."  AR 61.  As the MAC would later note, *see* MAC Closing Letters at 1, Plaintiff agreed, as part of the settlement, not to "challenge any matter whatsoever arising out of or related to the" FYE 2009 cost report, AR 62.

On August 12, 2016—more than 650 days after the MAC issued the NPRs for 2010 and 2011—Plaintiff requested a hearing before the Board as to those two NPRs.  *See* AR 101.  Because Plaintiff's appeal was well beyond the 180-day period, Plaintiff argued that there was "good cause" for its belated filing.  AR 11.  Specifically, Plaintiff asserted that it had "relied on the MAC's issuance of a reopening letter prior to the passing of the 180-day period and on that basis did not file an appeal within the initial 180 days" and reasonably believed that the MAC would resolve the FTE error committed in the 2009 cost report.  AR 12.  Plaintiff did not appeal the MAC's decision to close the 2009 cost report without revision.  *Id.*

Plaintiff found no success with the Board.  In a decision issued on January 9, 2018, the Board concluded that "the appeal was not timely filed and does not qualify for the good cause extension."  AR 87.  The Board found that Plaintiff "apparently knew of some FTE discrepancy because of a 2011 settlement agreement, even though it argues that its decision not to file an appeal was based on the Notice of Reopening issued in 2015."  AR 88.  Therefore, the Board concluded

---

[2] Although these closing letters are not included in the administrative record before the court, the court nevertheless will consider them as they are expressly referenced in the Board's decision denying Plaintiff review.  *See* AR 2.  It is therefore reasonable to assume that these letters were before the Board.

that that a good-cause extension was not warranted because Plaintiff "did not provide any documentation explaining why it did not or could not file sooner and therefore is at fault for not timely filing an appeal." AR 89. And so, the Board closed Plaintiff's appeal. AR 89.

**C.    Procedural History**

Plaintiff filed this action on March 3, 2017. *See* Compl. The Complaint contains four counts. In Count One, Plaintiff seeks as declaratory relief a finding that 42 C.F.R. § 405.1867(e)(4), the regulation that purports to make Board good-cause determinations judicially unreviewable, "is inconsistent with the Medicare Act," 42 U.S.C. § 1395*oo*(f)(1). Compl. ¶¶ 70–74. Count Two asks the court to set aside the Board's denial of a good-cause extension as arbitrary and capricious in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). *See id.* ¶¶ 75–79. In Count Three, Plaintiff asks the court to issue a writ of mandamus ordering the MAC to reopen the NPRs for fiscal years 2009, 2010, and 2011. *See id.* ¶¶ 80–88. In the alternative, in Count Four, Plaintiff contends that the court can exercise jurisdiction under 28 U.S.C. § 1331 to compel the MAC to reopen the NPRs in question, and requests that the court do so. *See id.* ¶¶ 89–93.

The parties' motions for summary judgment are now ripe for consideration. *See* Pl.'s Mot.; Def.'s Mot. for Summ. J., ECF No. 18, Def.'s Combined Mem. of P. & A., ECF No. 18-1 [hereinafter Def.'s Mem].

**III.    DISCUSSION**

**A.    The Board's No "Good Cause" Determination**

*1.    Reviewability of the Board's Decision*

Defendant raises two threshold issues that it contends preclude the court from reaching the merits of Plaintiff's claim that the Board acted arbitrarily and capriciously in denying the hospital

a good-cause extension. The court begins with these arguments. First, Defendant contends that the Board's denial of a good-cause extension is a discretionary agency action that is unreviewable under the APA. *See* Def.'s Mem. at 11–13. Second, Defendant maintains that the court cannot review the Board's ruling because it is not a "final decision of the Board" within the meaning of the Medicare Act, which subjects only "final" Board decisions to judicial review. *Id.* at 13–16. For the reasons that follow, neither argument succeeds.

### a. Discretionary Agency Action

Courts "begin with the strong presumption that Congress intends judicial review of administrative action, and the court will not deny review unless there is persuasive reason to believe that such was the purpose of Congress." *Ramah Navajo Sch. Bd., Inc. v. Babbitt*, 87 F.3d 1338, 1343–44 (D.C. Cir. 1996) (internal quotation marks and citation omitted). The APA precludes judicial review where an "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This exception to judicial review is "very narrow" and applies only in "rare instances" where there is "no law to apply," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971), or where there is "no meaningful standard against which to judge the agency's exercise of discretion," *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). *Accord Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011). To determine whether a matter has been committed to agency discretion, courts must "consider both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action." *Sierra Club*, 648 F.3d at 855 (internal quotation marks omitted); *see also Ctr. for Auto Safety v. Dole*, 846 F.2d 1532, 1534 (D.C. Cir. 1988) (per curiam) (stating that agency regulations may provide "law to apply" (internal quotation marks omitted)).

Here, Defendant makes two points about the Board's authority to make a no "good cause" determination. First, he argues that neither the Medicare Act nor the agency's regulations "purport to offer standards that a court should use when a provider challenges an extension denial." Def.'s Mem. at 12. Additionally, Defendant emphasizes that the applicable regulation does not "even require the agency to grant extensions," *id.*, as it provides that "the Board *may* find good cause to extend the time limit," *id.* (quoting 42 C.F.R. § 405.1836(b)).

These arguments run aground on Circuit precedent. The D.C. Circuit has held that standards similar to those in 42 C.F.R. § 405.1836(b) are reviewable. For example, in *Dickson v. Secretary of Defense*, 68 F.3d 1396 (D.C. Cir. 1995), the Circuit held that decisions made pursuant to a statute providing that the Army Board of Corrections "*may* excuse a failure to file [if it is in] the interest of justice" were reviewable. *Id.* at 1402. The court reasoned that Congress's use of "may" "suggests that Congress intends to confer some discretion on the agency, and that courts should accordingly show *deference* to the agency's determination. However, such language does not mean the matter is *committed* exclusively to agency discretion." *Id.* at 1401–02 (citing cases in which statues using the word "may" were found reviewable); *see also Amador Cty. v. Salazar*, 640 F.3d 373, 380 (D.C. Cir. 2011) (rejecting argument that Congress's use of "may" in an Indian gaming statute vested the agency with unreviewable discretion). Similarly, in *Marshall County Health Care Authority v. Shalala*, 988 F.2d 1221 (D.C. Cir. 1993), the Circuit rejected the argument that a statue allowing the Secretary under the Medicare program to make adjustments "as the Secretary deems appropriate" committed such decisions solely to agency discretion. *See id.* at 1223–24; *see also Menkes v. U.S. Dep't of Homeland Sec.*, 486 F.3d 1307, 1312–13 (D.C. Cir. 2007) (finding judicially reviewable a standard that permitted an agency to consider the "physical and economic" ability to provide services); *Cody v. Cox*, 509 F.3d 606, 608 (D.C. Cir. 2007)

(holding that statutory provision requiring that the agency "shall provide for the overall *health care needs* of residents in a *high quality* and *cost-effective manner*" contained a meaningful legal standard).

Like the legal standards at issue in these Circuit decisions, the good-cause regulation in this case, 42 C.F.R. § 405.1836, grants the Board discretion to decide whether to extend the 180-day period. The fact that the regulation uses "may," instead of "shall," is better understood to afford deference to the Board, rather than foreclose judicial review. Moreover, the regulation contains a "judicially manageable standard": "good cause." *See Heckler*, 470 U.S. at 830 (stating that "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion'"); *accord Claybrook v. Slater*, 111 F.3d 904, 908 (D.C. Cir. 1997) ("An agency decision is considered 'committed to agency discretion by law' under 5 U.S.C. § 701(a)(2) 'if no judicially manageable standards are available for judging how and when an agency should exercise its discretion.'") (quoting *Heckler*, 470 U.S. at 830)). The regulation defines what "good cause" means ("extraordinary circumstances beyond [the provider's] control"), and provides examples that would satisfy the standard ("such as natural or other catastrophe, fire, or strike"). As noted, courts routinely evaluate agency action with far less guidance.[3]

Accordingly, section 701(a)(2) of the APA does not foreclose the court's review of the Board's no "good cause" determination.

---

[3] For these reasons, the court reaches a different conclusion than the courts did in *Allcare Hospice, Inc. v. Sebelius*, No. CIV-11-365-FHS, 2012 WL 5246512, at *3 (E.D. Okla. Oct. 23, 2012), *aff'd* 533 F. App'x 859 (10th Cir. 2013), and *Lenox Hill Hosp. v. Shalala*, 131 F. Supp. 2d 136, 142 (D.D.C. 2000).

b.     Jurisdiction

The Medicare statute provides that "[p]roviders shall have the right to obtain judicial review of any final decision of the Board."  42 U.S.C. § 1395*oo*(f)(1).  A "final decision" of the Board is a jurisdictional prerequisite.  *See Ass'n of Am. Med. Colls. v. Califano*, 569 F.2d 101, 108 (D.C. Cir. 1977) ("Jurisdiction is bestowed on the federal courts to review a 'final decision' of the Board . . . .").  Here, Defendant insists that the Board's denial of a good-cause extension in this case does not constitute a "final decision of the Board."  Def.'s Mem. at 13–16.  Defendant posits that the phrase "'any final decision of the Board' . . . does *not* unambiguously include the Board's denial of a discretionary good cause extension, even if that denial is 'final' as a practical matter," *id.* at 14, and therefore the agency's interpretation of the Medicare statute is entitled to deference, *id.* at 13–14 (citing *Allcare Hospice*, 2012 WL 5246512, at *2 (holding that the phrase "decision of the Board" is "sufficiently ambiguous as to whether it includes the Board's denial of a good cause extension" and deferring to agency's interpretation under *Chevron U.S.A., Inc. v. Nat. Resources Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)).  To that end, Defendant points out that agency regulations expressly state that a "finding by the Board . . . that the provider did or did not demonstrate good cause for extending the time for requesting a Board hearing is not subject to judicial review."  42 C.F.R. § 405.1836(e)(4).  This is a reasonable interpretation of the phrase "any final decision of the Board," Defendant maintains, so the court must defer to it.

The court disagrees.  The text of the Medicare statute speaks directly to whether a no "good-cause" determination by the Board qualifies as "any final decision of the Board."  A denial of a good-cause extension is, by any definition, a "decision."  It also is a decision "of the Board." And, in this case, the Board's decision is "final."  The statute provides: "A decision of the Board *shall be final* unless the Secretary, on his own motion, and within 60 days after the provider of

14

services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision." 42 U.S.C. § 1395*oo*(f)(1) (emphasis added). The Secretary took no action on the Board's denial of Plaintiff's extension request and therefore the Board's decision became "final" 60 days after the Board made the decision. *See U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016) (stating that an agency action is "final" when it marks "the consummation of the agency's decisionmaking process" and determines legal "rights or obligations" (citation omitted)). Therefore, the plain text of Section 1395*oo*(f)(1) grants this court jurisdiction to review the Board's decision denying Plaintiff a good-cause extension.

The court's reading of section 1395*oo*(f)(1) is supported by the Circuit's decision in *Stovic v. Railroad Retirement Board*, 826 F.3d 500 (D.C. Cir. 2016). In *Stovic*, the court was called upon to interpret the exact same jurisdiction-conferring text found in the Medicare statute—"review of any final decision of the Board"—but under the Railroad Retirement Act. *See* 826 F.3d at 502. The Railroad Retirement Act provides, in relevant part, that "[a]ny claimant . . . may, only after all administrative remedies within the [Railroad Retirement] Board will have been availed of and exhausted, obtain a review of *any final decision of the Board* . . . ." 45 U.S.C. § 355(f) (emphasis added). The plaintiff, Stovic, had sought to reopen an adverse benefits decision by the Board, and the Board denied his request. *See Stovic*, 826 F.3d at 501. On appeal, the Railroad Retirement Board took the position that its denial of a request to reopen was not a "final decision of the Board." *See id.* at 502. The Circuit rejected that argument:

> [T]he Board's position does not square with the text of the statute. Section 5(f) provides for judicial review of "*any* final decision of the Board." The Board's denial of Stovic's request to reopen is a "decision of the Board." And that decision is "final." Therefore, the text of Section 5(f) provides for this Court's review of the Board's

> denial of Stovic's request to reopen the Board's 1999 benefits
> determination.

*Id.* (citations omitted).  That reasoning squarely applies here.  As discussed, the denial of a good-cause extension is a "decision of the Board" that is "final."  The text of the Medicare statute therefore confers jurisdiction to review that decision.

Defendant makes two arguments to urge a different result.  First, he points to two Supreme Court decisions, *Your Home Visiting Nurse Services*, 525 U.S. at 449, and *Califano v. Sanders*, 430 U.S. 99 (1977).  In *Your Home Visiting Nurse Services*, the Supreme Court held that a MAC's decision to deny a request to reopen a final cost report was not a "final determination . . . as to the amount of . . . reimbursement" reviewable by the Board under 42 U.S.C. § 1395*oo*(a)(1)(A)(i).  525 U.S. at 453.  The Court explained that the agency's interpretation of the statute as disallowing an appeal from a MAC's decision not to reopen was reasonable and entitled to deference.  *See id.*  The Court viewed the agency's interpretation as reasonable because reopening exists only by the "grace of the Secretary" and a contrary interpretation would frustrate the 180-day period to appeal an NPR.  *See id.* at 454.  Defendant relies on *Califano* for a similar reason.  There, the Supreme Court held that the denial of a request to reopen a claim of benefits was not a "final decision of the Secretary made after a hearing to which [the claimant] was a party" under the Social Security Act, 42 U.S.C. § 205(g).  *See* 430 U.S. at 108.  A plain reading of the statute compelled that result—"a petition to reopen a prior final decision may be denied without a hearing as provided in [Section 205(g)]" and thus did not qualify as a reviewable "final decision."  *Id.*  Also, the Court emphasized that the decision to reopen was afforded by regulation, not statute, and that an interpretation that would allow review of a reopening denial would frustrate the congressional purpose of the 60-day

limit within which to seek judicial review, i.e., a claimant could extend the 60-day period simply by filing a motion to reopen. *Id.*

Defendant argues that the considerations present in *Your Home Visiting Nurse Services* and *Califano* "are equally present here" because "[Plaintiff's] ability to obtain a good cause extension exists solely by the agency's grace, and a conclusion that extension denials were reviewable would frustrate that 180-day limit." Def.'s Mem. at 14. The D.C. Circuit, however, has rejected that very argument. Recall that in *Stovic* the Circuit interpreted the Railroad Retirement Act, which contains a judicial review provision that is identical to the Medicare statute: "any final decision of the Board." The Circuit held that *Califano* did *not* control there because of basic differences in statutory text. *See Stovic*, 826 F.3d at 504 (describing the decision in *Califano* as "based primarily on the [statutory] text"). Where the Social Security Act spoke of review "made after a hearing," the Railroad Retirement Act "provide[d] for judicial review of '*any* final decision of the Board,' without qualification." 826 F.3d at 504 (quoting 45 U.S.C. § 355(f)). Furthermore, the Circuit rebuffed the notion that the interest in finality discussed in *Califano* ought to drive its interpretation of the Railroad Retirement Act. It explained that "the [*Califano*] Court appealed to the interest in finality only after consulting the text of [Section 405(g)]." *Id.* The Circuit concluded: "We highly doubt that the interest in finality would have controlled in [*Califano*] if the Social Security Act had provided without qualification for judicial review of '*any* final decision' of the Secretary." *Id.* at 504–05. So it is here, too. Under the Medicare statute, Congress has allowed judicial review of "*any* final decision of the Board," thus encompassing a broader range of "final decisions" than in *Your Home Visiting Nurse Services* and *Califano*. A denial of a good-cause extension easily falls within the category of reviewable decisions.

That leaves Defendant's second argument. Here, Defendant draws a distinction between "the Board's *legal* determination as to its jurisdiction," which is reviewable, and the "denial of a *discretionary* good cause determination," which is not. Def.'s Mem. at 15. Defendant draws this line to distinguish this case from the Circuit's decision in *Auburn Regional Medical Center v. Sebelius*, 642 F.3d 1145 (D.C. Cir. 2013). Although the Supreme Court vacated *Auburn* on other grounds, *see Auburn Reg'l Med. Ctr.*, 133 S. Ct. at 817, Plaintiff relies on a portion of *Auburn* with which the Supreme Court did not disagree. Namely, the Circuit held that it could review a Board decision to dismiss an appeal filed more than a decade after the 180-day period expired. *See Auburn*, 642 F.3d at 1147–48. "Such a dismissal," the Circuit explained, "is final in any sense of the word. It is not pending, interlocutory, tentative, conditional, doubtful, unsettled, or otherwise indeterminate. It is done." *Id.* at 1148. Defendant argues that the rationale of *Auburn* does not apply here because in that case, the Board made the *legal* determination it had no jurisdiction, whereas here the Board exercised its *discretion* to deny a good-cause extension. The former is reviewable, Defendant says, whereas the latter is not.

Defendant's position cannot be squared with the text of the Medicare statute or the agency's own regulations. For starters, the Medicare statute draws no distinction between final Board decisions that are "legal" and those that are "discretionary"—even assuming a clear line could be drawn between those two categories.[4] Rather, it permits, without qualification, judicial review of "any" final decision of the Board. Therefore, the statutory text alone defeats Defendant's proposed distinction between legal and discretionary Board decisions.

Additionally, the agency's own regulations make no such differentiation. To the contrary, they provide that the denial of a good-cause extension is not the mere exercise of discretion, but

---

[4] After all, a denial of an extension for "good cause" also involves a "legal" determination. A decision that the provider has not met the "good cause" standard, as defined by regulation, involves the application of law to fact.

in fact is a judicially reviewable final Board ruling as to its jurisdiction. The regulations state: "If the Board denies an extension request and determines it lacks jurisdiction to grant a hearing for every specific matter at issue in an appeal, it must issue a Board dismissal decision dismissing the appeal *for lack of Board jurisdiction*." 42 C.F.R. § 405.1836(e)(1) (emphasis added). And, the regulations continue, "a Board decision under paragraph (e)(1) of this section"—the paragraph quoted in the previous sentence—"is *final and binding* on the parties, unless the decision is reversed, affirmed, modified, or remanded by the Administrator . . . no later than 60 days after the date of receipt by the provider of the Board's decision." *Id.* § 405.1836(e)(2) (emphasis added). Elsewhere, the regulations provide that a no "good cause" determination made under section 405.1836(e)(1) *is* judicially reviewable. Section 405.1877(a)(3) provides that a "Board decision is final and subject to judicial review under section 1878(f)(1) of the Act only if the decision . . . [i]s one of the Board decisions specified in § 408.1875(a)(2)(i) through (a)(2)(iii) of this subpart" and not reversed by the Administrator of CMS. *Id.* § 405.1877(a)(3)(i). Among the Board decisions specified in Section 408.1875(a)(2) is "[a] Board dismissal decision," "as described in § 405.1836(e)(1) and (e)(2)," *id.* § 405.1875(a)(2)(ii), which are, of course, the sections that provide that a denial of an extension for good cause amounts to a final decision dismissing an appeal for lack of Board jurisdiction. Taken together, these regulations make no distinction between legal and discretionary dismissals of appeals. Both types of decisions are treated as judicially reviewable final decisions of the Board.

Then, there is the regulation that purports to place no "good cause" determinations beyond the scope of judicial review. *See id.* § 405.1836(e)(4). But, for reasons already discussed, that regulation conflicts with the plain reading of 42 U.S.C. § 1395*oo*(f)(1). Therefore, the court is under no obligation to follow it. *See Chevron*, 467 U.S. at 842–43 ("If the intent of Congress is

clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). The court thus finds it has jurisdiction to review the Board's denial of Plaintiff's request for a good-cause extension.

## 2. *Arbitrary and Capricious Review*

At last, the court reaches the merits of the Board's decision that Plaintiff's proffered reasons for its filing of an appeal beyond the 180-day period did not satisfy the "good cause" standard. Importantly, Plaintiff does not take issue with Defendant's narrow definition of "good cause" as "extraordinary circumstances beyond [a provider's] control." *See* Pl.'s Combined Mem. of P. & A. in Opp'n to Def.'s Mot. for Summ. J. & in Further Supp. of Pl.'s Mot., ECF No. 20 [hereinafter Pl.'s Combined Mem.], at 15–16. Thus, the only question here under the APA is whether the Board's denial was "unsupported by substantial evidence" or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706; *see also* 42 U.S.C. § 1395*oo*(f)(1) (subjecting final decisions of the Board to the APA's standards of review). Plaintiff makes two arguments for why the court should reverse the Board's decision. First, Plaintiff argues that the Board's decision was not supported by "substantial evidence." *See* Pl.'s Combined Mem. at 26–28. Second, it contends that the Board's decision was contrary to law because the Board did not recognize that it had discretion to consider facts presented in making a good-cause finding and that it was not limited only to those examples of good cause set forth in the regulation. *See id.* at 29–30. Neither argument is persuasive.

First, the Board's ruling easily satisfies the "substantial evidence" standard. Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). In applying the test,

"[a]n agency conclusion may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view." *Robinson v. Nat'l Transp. Safety Bd.*, 28 F.3d 210, 215 (D.C. Cir. 1994) (internal quotation marks omitted). At bottom, the substantial-evidence test is a "narrow standard of review," *id.*, and "ultimately deferential," *Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 705 (1980).

Here, the Board found that Plaintiff "apparently knew" of the FTE discrepancy in the 2009 NPR long before filing the appeal "because of the 2011 settlement agreement" and "did not provide any documentation explaining why it did not or could not file sooner." AR 2–3. It therefore found Plaintiff "at fault for not timely filing an appeal." AR 3. This explanation satisfies the "substantial evidence" standard. Based on the evidence presented by Plaintiff, *see* AR 98–100, the Board determined that Plaintiff was on notice of the FTE discrepancy contained in the 2009 NPR more than 180 days before it filed an appeal on August 12, 2016. Moreover, Plaintiff also waited "634 days" to file its appeal of the 2010 NPR, which issued on November 17, 2014. AR 1. Plaintiff offered no "extraordinary circumstances beyond its control" to excuse it for missing the 180-day deadline. The Board's decision therefore is supported by the evidentiary record.[5]

Plaintiff makes much of the Board's statement that Plaintiff "did not provide any documentation explaining why it did not or could not file sooner," when it did in fact provide documentation to justify its late filing. *See* Pl.'s Combined Mem. at 17. But Plaintiff misreads

---

[5] The Board appears to have assumed that, when Plaintiff entered into the settlement agreement in September 2011, it would have known of the FTE error in the 2009 NPR. According to Plaintiff, that assumption was incorrect. Apparently, the 2009 NPR issued on April 15, *2013,* some 18 months after Plaintiff entered into the settlement. *See* Pl.'s Combined Mem. at 9. Plaintiff does not appear to have alerted the Board to the actual date of the issuance of the 2009 NPR. In any event, the actual date of the NPR is not material. *See PDK Labs. Inc. v. U.S. D.E.A.*, 362 F.3d 786, 799 (D.C. Cir. 2004) ("In administrative law, as in federal civil and criminal litigation, there is a harmless error rule."). If anything, that clarification proves that Plaintiff was aware of the FTE error as early as April 2013, yet did not appeal the 2009 NPR; nor did it appeal the 2010 or 2011 NPRs within 180 days after learning that the 2009 FTE error had affected the reimbursement amounts for those two years.

the Board's statement.  The absence of documentation to which the Board refers is Plaintiff's failure to appeal the FTE error when it first became apparent in the *2009* NPR, not Plaintiff's reasons for late-appealing the NPRs for the following two years.  The Board correctly observed that Plaintiff did not provide any documentation for why it did not timely appeal from the 2009 NPR.  *See* AR 2.

Plaintiff's second contention that the Board acted arbitrarily and capriciously by failing to recognize that it had discretion to grant a good-cause extension, *see* Pl.'s Combined Mem. at 16, is likewise incorrect.  The Board made no statement that it viewed "good cause" as consisting of only the examples contained in the regulation.  To the contrary, the Board plainly considered the facts before it and applied the good-cause standard to those facts.  *See* AR 88–89.  The Board committed no legal error.

Plaintiff makes one more argument.  It claims that it was misled by instructions found on the MAC's website, which stated that the MAC would not consider a request to reopen an NPR if the NPR was the subject of an open appeal.[6]  Pl.'s Combined Mem. at 2–5.  Plaintiff claims that it took this misleading statement to mean that a claimant could not simultaneously appeal and seek reopening.  The flaw in this contention is two-fold.  First, Plaintiff did not raise the purportedly misleading statement on the MAC's website before the Board.  It therefore cannot press that

---

[6] For support, Plaintiff provides an affidavit from the lawyer that represented Plaintiff before the Board and the MAC, Paul Evers.  *See* Pl.'s Mot., Ex. 2, Aff. of Paul Evers, ECF No. 16-3.  Evers recounts Plaintiff's decision to move to reopen, instead of appeal, and states that he "reasonably believed that pursuing the Reopenings was appropriate based upon communications with the Hospital, the MAC's website, the relative time and expenses of an appeal given the Hospital's financial condition, my communications with the MAC, the MAC having granted all three Reopening Requests, and the proposed corrective adjustment received in July 2015."  *Id.* ¶ 7(g).  Under the APA, "review is to be based on the full administrative record that was before the [agency] at the time [it] made [its] decision."  *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) (quoting *Overton Park*, 401 U.S. at 420).  Accordingly, the court will "not allow parties to supplement the [administrative] record unless they can demonstrate unusual circumstances justifying a departure from this general rule."  *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010) (internal quotations marks omitted).  Here, Plaintiff has not shown that Evers's affidavit satisfies the "unusual circumstances" standard.  The court therefore disregards Plaintiff's extra-record submission.

argument here for the first time. *See Salt Lake Cmty. Action Program v. Shalala*, 11 F.3d 1084, 1087 (D.C. Cir. 1993). Second, even if the court could consider such evidence, this argument would still founder. Plaintiff's request is, in essence, a request that this court equitably toll the 180-day period due to the website's misleading statement. *See* Pl.'s Combined Mem. at 4 (insisting that the website error "should not prejudice the Hospital"). But the Supreme Court has held that the 180-day limit is not subject to equitable tolling. *See Auburn Reg'l Med. Ctr.*, 135 S. Ct. at 826–28. Thus, even if the website had supplied erroneous information, that fact would not excuse Plaintiff's late filing.

There was a solution to the seeming quandary in which Plaintiff found itself: Plaintiff could have filed a protective appeal. The Medicare regulations make clear that "[a] request to reopen does not toll the time in which to appeal an otherwise appealable determination or decision." 42 C.F.R. § 405.1885(b)(2)(ii) (emphasis added). If Plaintiff believed that the proper course was to have the MAC correct the FTE error in the first instance, then to preserve its right of appeal Plaintiff could have simultaneously filed both an appeal to the Board and a request to reopen before the MAC within 180 days. By doing so, Plaintiff would have safeguarded its right to Board review while trying to secure redress through the MAC. Plaintiff did not, however, take this precautionary step.

Accordingly, the court finds that the Board's decision denying Plaintiff a good-cause extension was supported by substantial evidence and was not contrary to law. The court therefore will enter judgment in favor of Defendant as to this claim.

## B.    Directing the MAC to Complete the Reopening

In the alternative, Plaintiff asks the court to order the MAC to reopen the 2009, 2010, and 2011 NPRs and correct the FTE error. Plaintiff contends that the court has the jurisdiction and

authority to grant such relief directly under the Medicare statute; through a writ of mandamus; or under the court's federal question jurisdiction. None of these three alternatives provide the court with jurisdiction to review the MAC's decision in this case.

The first avenue cannot be sustained under the clear text of the Medicare statute upon which Plaintiff relies: 42 U.S.C. § 1395*oo*(f)(1). Section 1395*oo*(f)(1) speaks to judicial review of "any final decision of the Board." *Id.* A decision made by a MAC, quite plainly, is not a "final decision of the Board." For that reason alone, Section 1395*oo*(f)(1) provides no jurisdictional anchor. The Medicare regulations are to the same effect. They provide: "A determination or decision to reopen or not to reopen a determination or decision is not a final determination or decision within the meaning of this subpart and is not subject to further administrative review or judicial review." 42 C.F.R. § 405.1885(a)(6). Plaintiff does not argue—nor could it—that this regulation conflicts with the Medicare statute. *See Your Home Visiting Nurse Servs.*, 525 U.S. at 454 ("The right of a provider to seek reopening exists only by grace of the Secretary.")

The second and third grounds likewise are unavailable. The Supreme Court's decision in *Your Home Visiting Nurse Services* squarely forecloses them. The Court there held that neither mandamus nor the federal-question statute provides a basis for judicial review of a MAC's decision not to reopen. *See id.* at 456–57 (holding that "petitioner would still not be entitled to mandamus relief because it has not shown the existence of a 'clear nondiscretionary duty' to reopen the reimbursement determination at issue" (citation omitted)); *id.* at 456 (holding that "judicial review under the federal-question statute, 28 U.S.C. § 1331, is precluded by 42 U.S.C. § 405(h), applicable to the Medicare Act by operation of § 1395ii, which provides that '[n]o action against . . . the [Secretary] or any officer or employee thereof shall be brought under section 1331

. . . of title 28 to recover on any claim arising under this subchapter" (alterations in original)). Therefore, Plaintiff is left with no ground upon which this court can review the MAC's rulings.

Plaintiff acknowledges these hurdles, but nevertheless insists that the MAC's decisions here are reviewable. It argues that *Your Home Visiting Nurse Services* does not address the situation presented in this case, "where the MAC granted the Hospital's reopening request . . . and substantially completed the reopening." Pl.'s Combined Mem. at 18 Plaintiff is right about one thing: The MAC's action here was not merely denying reopening, but rather reopening the NPR and then closing it without revision. But for jurisdictional purposes, this is a distinction without a difference. And Plaintiff points to no statutory or regulatory basis that would warrant different jurisdictional treatment. Indeed, the Medicare regulations are to the contrary, as they proscribe the type of appeals that can be made to the Board from a MAC reopening decision. According to those regulations:

> Only those matters that are specifically revised in a revised determination or decision are within the scope of any appeal of the revised determination or decision. Any matter that is not specifically revised (*including any matter that was reopened but not revised*) may not be considered in any appeal of the revised determination or decision.

42 C.F.R. § 405.1889(b)(1)–(2) (emphasis added). Plaintiff's NPRs for 2009, 2010, and 2011 were "reopened but not revised." Therefore, Plaintiff could not appeal the MAC's determination to the Board and, correspondingly, to this court. Accordingly, the court lacks jurisdiction to review the MAC's decision in this case.

## IV. CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment. A separate final, appealable Order accompanies this Memorandum Opinion.

Dated: September 13, 2018

Amit P. Mehta
United States District Judge